**W. H. VANLANDINGHAM et ux.,**
**Appellants,**

v.

**FIRST SAVINGS & LOAN ASS'N., et al.,**
**Appellees.**

**No. 5787.**

Court of Civil Appeals of Texas.

El Paso.

Dec. 7, 1966.

Rehearing Denied Jan. 4, 1967.

Lynch & Chappell, Midland, for appellants.

Strasburger, Price, Kelton, Miller & Martin, Royal H. Brin, Jr., Dallas, Emil C. Rassman and John Gunter, Midland, for appellees.

## OPINION

PRESLAR, Justice.

This is a slip and fall case in which a summary judgment was granted in favor of the two defendants.

Appellants, W. H. Vanlandingham and wife, Irene Vanlandingham, brought suit against appellees First Savings & Loan Association of Midland, and Criver-Hicks Building Maintenance, Inc., for personal injuries to Irene Vanlandingham resulting from a fall on the floor of the premises of First Savings and Loan Association. Plaintiffs alleged that Mrs. Vanlandingham entered the savings association's building as a customer on the occasion in question; that the defendant Criver-Hicks provided janitorial services to such premises, including maintenance of the floor, and that the two defendants were guilty of acts of negligence causing her fall. It was alleged that the floor was slippery; that her fall was caused solely by the slipperiness of the floor; and that the defendants were negligent in failing to clean the vinyl tile floor thoroughly before applying wax, using an electrical buffing machine, mopping with clear water, sweeping with a hair broom, permitting excessive wax accumulation, applying an imperceptible film of paraffin wax, applying wax contrary to the manufacturer's instructions, maintaining the tile floor in a manner contrary to the instructions of the tile manufacturer, and permitting an improperly trained employee to care for the floor. It was alleged that each of such acts and omissions caused the floor to be slippery and constituted negligence, causing the slip and fall and the resulting severe injuries. In addition to denying any act or omission of negligence, the defendants alleged proper maintenance of the premises, lack of knowledge of any defect, open and obvious condition, assumption of risk, voluntary exposure to risk, contributory negligence, proper lookout and unavoidable accident.

This being a common law negligence case determined under the provisions of Rule 166–A, and such cases ordinarily not being susceptible of summary adjudication, it is necessary to look briefly to the rules which govern its disposition.

As set out in Great American R. Ins. Co. v. San Antonio Pl. Sup. Co., 391 S.W. 2d 41 (Tex.1965):

> "Rule 166–A, Texas Rules of Civil Procedure, provides that summary judgment shall be rendered if it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. Tigner v. First Nat'l Bank, 153 Tex. 69, 264 S.W.2d 85 (1954); Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952). In other words, the evidence must be viewed in the light most favorable to the party opposing the motion. Valley Stockyards Co. v. Kinsel, 369 S.W.2d 19 (Tex.Sup.1963); Smith v. Bolin, 153 Tex. 486, 271 S.W.2d 93 (1954). If the motion involves the credibility of affiants or deponents, or the weight of the showings or a mere ground of inference, the motion should not be granted. All conflicts in the evidence are disregarded, and the evidence which tends to support the position of the party opposing the motion is accepted as true. Cowden v. Bell, 157 Tex. 44, 300 S.W. 2d 286 (1957)."

Depositions of four witnesses were before the court; a vice-president of the Savings Association, the manager of the maintenance company, the janitor employed by the maintenance company, and the plaintiff Irene Vanlandingham. Also, there was an affidavit by Mrs. Vanlandingham in opposition to the motions for summary judgment.

Principally because of the deposition of plaintiff, Mrs. Vanlandingham, appellees urge correctness of the judgment under two concepts of assumed risk: (1) the "no duty" doctrine, as to which it is said that an occupier of premises owes no duty

to warn or protect an invitee from open and obvious dangers of which the invitee knows or of which he is charged in law with knowledge; and (2) the "volenti non fit injuria" doctrine, which does not allow recovery where the plaintiff receives injury to which he assents or to which he voluntarily exposes himself with knowledge and appreciation of the danger.

In seeking to summarily dispose of the plaintiff's case, the defendants thus undertake to establish that each and every element of at least one of those concepts of assumed risk exists as a matter of law. Their task is difficult, and we do not think it was accomplished, for we are of the opinion that the deposition and affidavit of the plaintiff, Mrs. Vanlandingham, do not foreclose a fact question as to her knowledge of the slippery condition of the floor. Such knowledge is an element of both concepts.

The fact that the floor was slippery cannot seriously be questioned in this proceeding. It was controverted. Mrs. Vanlandingham testified positively that it was slippery. Under the rules quoted above, we accept that and ignore the contrary evidence of the movant for summary judgment. That fact being established, it can be inferred from the evidence submitted that the appellee knew or should have known of it. Appellees' position here is that the slippery condition was open and obvious, which is quite the opposite from saying it does not exist. Assuming then, that the condition of the floor was slippery, we move to the matter of Mrs. Vanlandingham's knowledge of that condition. The holdings of our Supreme Court are that ordinarily a plaintiff-invitee cannot recover if he knows of the condition, realizes the danger, and appreciates the danger, or is charged in law with such knowledge, realization and appreciation. Halepeska v. Callihan Interests, Inc., Tex., 371 S.W.2d 368; McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391; Houston Nat. Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374; Wesson v. Gillespie, Tex., 382 S.W.2d 921. The question is as to the actual knowledge and appreciation of this plaintiff, as distinguished from what she should have known and appreciated. She could not intelligently choose to encounter a risk of which she did not actually know, even if she should have known. Justice Greenhill, the author of the opinion in the Halepeska case, explains it in an article in the Texas Bar Journal, Vol. 28, No. 1, p. 62, dated January 22, 1965:

"In McKee v. Patterson it was said that the Plaintiff could not recover if he *knew* of the conditions, and appreciated the danger, or *should have known* and appreciated the danger. The particular language which caused the difficulty was the statement that under some conditions, it might be an issue of fact for the jury as to whether the plaintiff-invitee should have known of the danger. In the Halepeska opinion, the Court reconsidered the 'should have known' and 'should have appreciated'. It narrowed the factual inquiries to knowledge and appreciation of the danger as distinguished from 'should have known and appreciated'. The Court reasoned that a person could not make any sort of intelligent choice if he did not know of the danger or appreciate the extent of it. Perhaps a plaintiff, as a prudent person, *should* have known and appreciated the danger, but he did not. That question, however, is one of contributory negligence and may be separately submitted along with proximate cause. What the Supreme Court did in the recent Halepeska case was to be more certain that the plaintiff *did* know of the danger and *did* appreciate the risk. These, with knowledge of the conditions, are the basic ingredients."

To establish plaintiff's knowledge of the danger in the case before us, appellees point to her deposition statement that she had slipped, but not fallen, on this floor on other occasions. But the depositions show that she was only in the premises once every two or three months and do not

show that she had been on the premises more recently than that before the occasion of her fall, and the floor was waxed once every two weeks, washed and buffed at varying intervals, and swept and dust-mopped daily. The slippery condition of the floor could have varied from day to day or between visits of the plaintiff. This presents a different situation from the unchanging stairs of the bank in Houston Nat. Bank v. Adair, and the unchanging door trestle of the Eight-Ball Lounge in Wesson v. Gillespie. How the floor was maintained from day to day was the basis of acts of negligence alleged by plaintiff, and presumably some of those acts could have brought about a changed condition between the visits of plaintiff. A close question is whether plaintiff had knowledge of the slippery condition by seeing it. Was the slipperiness so open and obvious that it could be plainly seen? One cannot close his eyes to obvious danger, but the test is whether it is so open and obvious that one could plainly see it. Plaintiff testified by deposition at great length as to this, and the bulk of her testimony goes to appearance of neat and clean, glossy, shiny, and highly polished. Under persistent questioning she admitted that when she said it was highly polished, she meant that it was slippery. Her testimony would support a jury finding on such a question, or possibly call for a directed verdict, but this is a summary judgment case, so that we must look only to the evidence to the contrary. When we do that, we find that her testimony loses its conclusive character.

"Q You stated it was always highly polished. I asked if you meant by that that it was slippery, and you said 'yes'. Do those terms mean the same to you— 'highly polished' and 'slippery'?

A It could be.

Q Could be—O.K. But this floor, in particular, is it your testimony it was always slippery?

A I had never fallen before."

* * * * * *

"Q Prior to falling, at that time, had you slipped or felt the floor being slippery that day—prior to falling?

A No."

* * * * * *

"Q On the times previous to the day in question, the day on which you fell, how would you describe the floor in regard to its slipperiness; in other words, had you noticed it as being a slippery floor, or had you noticed anything about that at all?

A It was always highly polished, neat in appearance."

Much of the plaintiff's deposition testimony is of a similar nature. Plaintiff executed an affidavit attached to her motion in opposition to the application for summary judgment, in which she said: "I had no actual knowledge that the floor was in such condition as to cause me to fall and I did not appreciate the fact that the floor was dangerous until after I had fallen"; and, "The young man who took my deposition insisted on using the terms 'highly polished' and 'slippery' as synonyms"; and " * * * even though the floor was highly polished and neat in appearance, it did not necessarily look dangerous." We think this affidavit could be considered for what it was worth, although the objection is now made that it is self-serving and amounts to conclusions, and we think the last-quoted statement (that the floor did not look dangerous) is pertinent to our question. It is a hair-splitting observation, but then this is a close case; so we observe that we are not entirely satisfied that the plaintiff could determine by visual observation alone that the floor was slippery. "Slippery" is a condition better determined by the sense of feel, rather than sight. It is not something which, in the words of the comic-strip character, "any fool could plainly see". What we are saying here is emphasized by the case of Cline v. Texas Hotel, Tex.Civ. App., 392 S.W.2d 594 (n. w. h.), in which summary judgment was upheld on the plain-

tiff's testimony that she could feel the slickness of the floor as she walked on it, and on the occasion in question actually felt of the floor, as she always did, on entering those premises to check on its known slick-as-glass condition. She had been recently on the premises and remained there during the course of a banquet before her fall. In our case, Mrs. Vanlandingham had an opportunity to observe the floor only during the time it took her to go from the door to the counter and almost back to the door, where she fell. She felt of the floor after she had fallen.

Being of the opinion that the motion for summary judgment should not have been granted, the cause is reversed and remanded for trial.